May it please the court, Albert Chow on behalf of the petitioner Guo Zhihui. I'm sorry, how are we going to pronounce this name? Well, the last name would be Guo. Guo? Guo. Okay. Yeah. Your Honor, this is an asylum case, and in this particular case, the petitioner was found to be credible. Therefore, we're going to take his testimony as true. Therefore, the two questions before the court are this. One, whether or not he suffered past persecution, and two, whether or not there's a well-founded fear of future persecution. And we believe that in both of these questions, the answer should be yes. The case essentially cited by the board in denying asylum in this case is Guo v. Gonzalez. And, Your Honors, in that case, I believe that it is a very specific holding by the court, the Ninth Circuit, that is specifically applied to the facts of that case, but this particular case is distinguishable. In this particular case, it is not a single isolated incident, but a series of acts that do amount to persecution. The case in Guo was very specific. They found no past persecution because they felt that, number one, the petitioner in that case did not suffer injuries of any kind, did not require any kind of medical attention, and essentially they said he had to report for five times, but after that, the government essentially lost interest in him. In this case, completely different. In this particular case, the petitioner did suffer injuries. He testified that he had bruises, and also I believe he said the skin on his back was also penetrated, and he required medical attention. And also he continued to report to the police even after he was released from detention. Not only that, but they continued to require him to report. There was no, I guess, cutting off of the reporting period. He continued to report up until the time that he essentially decided to leave China. Did he attend any more home church meetings after he was arrested? No, Your Honor. In this case, he testified that when he reported every week, he was continually asked about his activities, that he was threatened, that if he attended again that he would be arrested again, so he essentially quit his practice of the home church. Did he sign something saying he wouldn't go to the home church? Yes. When he was released from detention, he had to sign a guarantee letter essentially promising that he would not attend the home church again. And again, this is another fact that is distinguishable from Gu, in that Gu, the court specifically said that he was not objectively unable to attend the home church, where in this case he was. And his mother was also arrested and interrogated, and she was subject to some similar probation, is that correct? Yes, but his mother remained in China, and she essentially continued to report, I believe it was for a period of two years, and then at that point the government said, well, okay, that's... And do we know whether she's returned to attending home church in China? That was not specifically stated in the testimony. The country report looks like it's a little bit mixed on what happens with home churches. It looks like in some areas they are tolerated, and in other areas they are not tolerated, but it wasn't very specific as to what regions we could anticipate that in. Yes, I believe, I mean, I think every single region is different. It depends on where you are and who you are dealing with. I mean, I believe that home churches in general in the country of China are considered to be illegal, but there are some, I guess, areas in which they're tolerated, as long as they remain small and unobtrusive and do not essentially spread out a little bit too large. And so, Your Honors, so what I'm saying is in this case, the series of acts combined together does amount to persecution. This is not a single isolated incident, and I believe that that's one of the main issues, I guess, throughout the Ninth Circuit. I believe that this particular case has been misapplied by many judges in the fact that they just simply cite a single isolated incident as a crutch for denying asylum based upon no past persecution, where I believe that this Gu is a very specific case with a very narrow holding. And also, Your Honors, I would also like to point out that Justice Beezer, in the dissent in Gu, specifically pointed out that, well, in his argument about Gu having suffered past persecution, he stated that the reason why he quit reporting after five times is because the government basically said, well, they already deterred him from attending the home church, that the persecution had been completed, and therefore there was no need to have him continue to report. And so I believe that this reporting requirement weekly, where you continue to ask him what his activities are, continue to threaten him, this is part of the persecution. This is a continuing act of persecution. Not only that, Your Honor. How long was it from the beating and the commencement until he left the country? I believe it was approximately seven months, Your Honor. And again, it was not like seven months it stopped. He was supposed to continue, but he just decided to. He had been reporting up through that time. Correct. Correct. Right. And so that leads to why he has a well-founded fear of future persecution. He testified that once he left the country and the authorities had discovered that he had not been reporting as was required, they came to his home and they started asking questions, where he is and essentially threatening his family and saying he must come back and do this. He left the country legally, did he not? Yes. Right. He left the country legally with a student visa, I believe. Right. And I believe he testified that they came at least five or six times in the next couple of years, checking occasionally to see if he had returned or something like that. And so we believe that he does also meet the well-founded fear standard, which is simply a one-in-ten chance. And based upon his own credible testimony, subjectively certainly he testified that he was afraid to return, but also objectively I believe that his own credible testimony does support the notion that he has a well-founded fear, that the authorities did come to his home and did look for him and did ask questions about him and wanting him to return. And again, as Your Honor pointed out, country reports does support the notion that home churches are essentially that one that attends a home church is subject to detention. So we believe that overall in this case that he has suffered past persecution and he does have a well-founded fear of future persecution. Do you want to save some time for rebuttal? Yes, Judge. Thank you. Okay. Let's hear from the government. Mr. Stanton? May it please the Court. Religious freedom is very important to the Attorney General and we should all be concerned when religious rights and freedom of worship are interfered with. That being said, to get relief under our immigration laws, the alien must show that he was actually persecuted. Just having liberty interfered with is not sufficient. And in this case, the Board determined, in a ruling that was supported by substantial evidence, that the alien here did not suffer past persecution. Consistent with this Court decision in Gu, the case where the Court denied the petition for review, his beatings, although however unpleasant, were not severe. He said he sought medical treatment, but it doesn't sound like he was required to do so because the doctors at the hospital gave him only... he was only there for an hour and did not prescribe any medicine, not even painkillers. And he was detained relatively briefly. Again, undoubtedly unpleasant, but not the type of detention of such length that would meet the extreme standard of persecution. He also said that he was... he also said that he was fined 3,000 RMB, which I understand to be the equivalent of $500 or slightly less. That's certainly not trivial, but that is not the type of economic persecution, at least there's no testimony. Counsel, all of that would be... all of that might be fine and good if he just had to pay a $500 fine, withstand the unpleasantness of being arrested and beaten by the police just on one-time occasion, and then was allowed to go back to church. The problem is that he was monitored every week, and he was asked, are you going to church? And he had to tell them. I assume that the United States does not want him to lie. Not at all. They asked him if he was going to this particular house of church. That's right. Yes, and he was not. Well, he was not because he was under penalty of being beaten and arrested again. So how is that not persecution if he is prevented by the government, effectively prevented from the government, from attending church? Just to be clear, it's not past persecution. So I assume that... Well, why is that not past persecution? Not past persecution? Well, I mean... Why is it not past persecution? I understand what the government is trying to do with goo, but the goo goes to the question as to whether a one-time beating is sufficient by itself to constitute persecution. What's different for me about this case is that he is monitored and monitored very carefully to ensure that he does not attend church in the future. In the future, yes. Well, but why is the fact that he suffered that not evidence of his past persecution? Well, because the experience is not so extreme. He fears future harm. It has nothing to do with being extreme. We don't have to be beaten within an inch of our life to suffer persecution. It's not the only way that we can suffer persecution. But when the government is preventing him from attending his home church by monitoring him on a weekly basis where he knows that if he attends church that the likely consequence is that he is going to be beaten and interrogated again, why does that not constitute persecution on account of religion? If it is, it would be future persecution. I don't understand that argument, counsel. Do you agree that he also had to sign a statement that he would not go back to attending this home church? Yes, we did. And why isn't that, if the government coerces you to agree not to practice your religion, why wouldn't that be past persecution as of the date that it happens? Because I would respectfully submit there's a difference between signing a statement saying you will not attend a civic home church and not renouncing Christianity altogether. That was the key difference between the Ninth Circuit's decision in Gu and Guo. It's a statement of renouncing your religion, but it wasn't like they said, oh, you can go to St. Patrick's, you can't go to St. John's. As far as we know, that was where his religion was being practiced in that area. But, I mean, the board also cited the country conditions report indicating that China does allow the practice of Christianity in other forums. Right, but not the church that he wishes to attend. Not that particular house church, no. But even in other forums, it wasn't like St. Patrick's and St. John's. The country report is a little ambiguous, but it certainly sounds like, well, yes, you can't practice in Fujian, but you can go to Sichuan, which is 1,000 miles away and 200 million people away. Well, I mean, be that as it may, but the mother at least continued to study the Bible. In her own house. In her own house, yes. But not with other people. She couldn't attend church where she wanted to attend church. She wanted to attend that house church. Under penalty of arrest. Under penalty of arrest, I mean, yes. I mean, she was under, yes. I don't understand. I guess I don't understand. With Judge Boggs, I don't understand the argument that because there are other churches that are recognized, the Methodists, the Baptists, the Catholics, and so on, that that's okay. I mean, we wouldn't accept this argument coming from Russia that you may be a Jehovah's Witness as long as you're Russian Orthodox. That doesn't make any sense, does it? This situation actually is, like I said, we may find it offensive, but it's a fairly common situation. I did not write this brief, but I know that other courts have denied petitions for review involving essentially identical circumstances. I can submit those cases to you. I can read them right now. I mean, petitions from the 4th, 10th, 6th, and 3rd where the alien was required to sign something, I will not attend the house churches, but the courts ruled that that was not a substantial restriction on one's liberty, given that there was evidence he could have attended other churches or practiced Christianity in other forms. And the position of the United States is that that's acceptable? That's acceptable. That's the position of the United States, yes, Your Honor. So the great state of Nevada could simply decide that Catholicism was the appropriate religion, and everybody who was something else could just, as long as they could attend the Catholic church, would have religious freedom? That's the position of the United States? In some form, in some form. It's certainly disturbing they don't have full religious freedom, but they have, I mean, some religious freedom. So it does not reach the level of persecution. At best, it's conduct we find offensive. Would the United States take the same position if Mr. Guo were a practitioner of Falun Gong? Falun Gong? I'd say, well, you're Falun Gong, but you can be Catholic. I do know. We have seen many Falun Gong cases. Yes. And we have. Would the position of the United States be the same by saying that even though he's Falun Gong, he can be Catholic? And that would be acceptable to the United States? My understanding is Falun Gong is more of a political movement rather than religious. I apologize for my lack of knowledge. Is Falun Gong also religious or quasi? I just don't think I've ever heard an argument from the United States that because you can attend a different church, you're okay, you're not being persecuted on account of your religion. That is our position, yes. And, like I said, there are cases. Do you think there are some cases? From the circuits, yes. First of all, this brief focus on the Ninth Circuit decisions, yes. Are there Ninth Circuit decisions to that effect? I'm sorry? Are there Ninth Circuit decisions to that effect? Gu and Guo were the two major ones. There may be a few unpublished cases. And we would submit that this case bears far greater resemblance to Gu that denied the petition than Guo, which granted the petition. So, again, the alien in Guo had to sign a document saying that what he did was wrong. We can only presume that he would be punished again if he attended the house church a second time. But I don't think the alien actually did, so we don't know what happened. But, again, this court, the Ninth Circuit, denied the petition. And, again, the rest of the circuit, the lack of severe physical harm, the lack of economic persecution. If it would be okay to let him submit those, I'd be interested to see them. Yeah, Counselor, would you please submit the cases from the other circuits? Whatever cases you want to do, be sure you serve. Again, they're not Ninth Circuit cases. They're cases from other courts, but they involve this basic scenario. Okay. If it's okay with the panel, I think what we'll do is ask you to submit those in a letter. I'll actually be arguing cases in court all week, but I'll do so as soon as I get back to Washington. I'll be here tomorrow, and I'm going to Seattle for a case on Friday. I'll return to Washington next week. I'll get you as soon as I can. I promise. Okay. All right. Okay. And might there be other questions? With respect to well-founded fear, well-founded fear in the future, the only thing he was afraid of, he testified, was that he would be punished for violating the reporting requirements. Well, right, as long as he doesn't go to church. That wasn't his testimony. If he goes back and goes to church, then he's got a well-founded fear of arrest, doesn't he? There's no testimony he was afraid of that, though. It could be true, but what he actually told the immigration judge was he would be punished for violating the reporting requirements. Well, that would be the immediate punishment. Then if he's in jail, then he can't go to church anyway. All right. But that is the record that the Board of Immigration was working with here, and that would also go to the Convention Against Torture claim as well. So, I mean, I don't even think the alien in Guo, where this court granted the petition, I don't even think he asserted a claim for protection under the Convention Against Torture because the record reveals that, however, whatever harassment or offensive behavior that China does to its Christians, they don't torture Christians. There's no pattern of practice of torture against Christians, let alone against this alien in particular. Okay. So. Any other questions? It doesn't appear so. Thank you, counsel. I'll submit the case as soon as I can. Okay. Thank you. Thank you. Mr. Chau. Well, Your Honors, as to DHS's argument or the government's argument about various cases that he may submit, you know, the point I wanted to bring to court today is that Guo should not be applied very broadly, that this was a specific case about specific facts and that every single case is different and every single case should be essentially adjudicated on its own facts. And so government counsel submitting whatever case from whatever circuit about whatever case Counsel, if we're forced to a position of trying to decide between Gu and Guo as to the severity of this beating, whether you got beaten more severely like Guo or less severely as in Gu, it seems to me that's a tough position for you to take. But it seems to me your strongest argument is to say it has something to do with the beating, but the beating is really the deterrent for not continuing to attend church. Plus, he's got a reporting requirement in which he's got to go every week and reassure the police that he didn't go to church this week. I agree with you, Your Honor. And, you know, as I argued in my own brief and as I stated before, the point of this case is that it is a series of acts by the government. As you said, not just the detention, not just the beating, but continuing to say you need to report every single week. And during the reporting, continuing to threaten him, continuing to ask him, what have you been doing this week? This is a series of acts, not simply just one single isolated incident. What's your best case for the proposition that preventing someone from attending the church of their choice under threat of arrest constitutes persecution? Well, Your Honor, you know, the board in its decision specifically said that, well, basically, he didn't have to renounce his belief in Christianity. And that strikes me as, I mean, in essentially preventing him from attending the home church, it is tantamount to renouncing your belief in Christianity. I mean, I suppose, yes, in his heart, he can still believe in the religion. And I believe he testified that he continued to read the Bible on his own when he had time at his own home. They didn't confiscate his books. They didn't – well, it doesn't specifically state that whether his particular Bible was confiscated or whether he somehow got another one. But the point is that he could, I suppose, in his own heart, read the Bible and believe in the faith, secretly, I suppose. But he was unable to attend the home church. They specifically said you cannot attend the home church. Do you have a case that suggests that that kind of act by the government constitutes persecution? Well, Your Honors, I did cite a case, Fisher v. INS, which is somewhat instructive, if I can find the exact quote. And it basically says, When a person with religious views different from those espoused by a religious regime is required to, conform to, or is punished for failure to comply with laws that are fundamentally or abhorrent to that person's deeply held religious convictions, the resulting anguish should be considered in determining whether the authorities have engaged in extreme conduct that is tantamount to persecution. Fisher v. INS, 37 F. 1371, 9th Circuit, 1994. So that particular case doesn't say that this – that that would be persecution, but that the resulting anguish should be determined – or should be – it should determine – should be considered in determining whether or not past persecution resulted. And we believe, again, that the series of acts, that that plus everything else that occurred combined, does amount to past persecution. Okay. Thank you. All right. Thank you, Mr. Chau. We thank both counsel for the argument. Glover's secession is submitted.
judges: Boggs, Bybee, Watford